UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

WILLIAM ROBERT SHAW,

        Plaintiff,

    v.                                      Case No. 20-C-1533

COUNTY OF MILWAUKEE, et al.,

        Defendants.

─────────────────────────────────────────────

## SCREENING ORDER

─────────────────────────────────────────────

William Robert Shaw, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights during his arrest and criminal prosecution. Dkt. No. 15. The Court dismissed his original complaint but granted leave to amend, cautioning that a short, plain statement of his claim was required. Although Shaw instead filed a 46-page amended complaint, the Court will proceed to determine whether it states a claim upon which relief may be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement

of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF SHAW'S AMENDED COMPLAINT

Shaw is a pretrial detainee at the Milwaukee County Jail. Dkt No. 15, ¶4. He names as defendants: (1) County of Milwaukee; (2) Milwaukee County District Attorney John Chisolm; (3) Milwaukee County Assistant District Attorney Patricia Irene Daugherty; (4) Milwaukee Police Detective John R. Shipman; (5) West Allis Police Detective Nicholas Stachula; (6) Milwaukee Police Lieutenant Medrina Delacruz; (7) Attorney Richard Henry Hart; and (8) Milwaukee County Circuit Court Judge Joseph R. Wall. *Id*., ¶¶5-13. The allegations in this complaint stem from Milwaukee County criminal cases 17CF769 (possession of heroin, cocaine, and firearms) and

2

Case 1:20-cv-01533-WCG   Filed 02/23/21   Page 2 of 11   Document 29

17CF3355 (reckless homicide/deliver drugs). *Id*., ¶¶46, 49. Both cases are still pending in state court and have not yet resolved.[1]

On February 13, 2017, Shipman, Delacruz, and Stachula "audio-recorded" a phone call between Trina L. Florez and Shaw. *Id*., ¶¶16-23. They sat in an "unmarked official police vehicle" in front of her house and asked her to plug an "earpiece/microphone" into her cell phone, allowing them to listen to the call and record the call. *Id*., ¶¶19-20. During the call, Florez told Shaw to come to her house to pick up some money. *Id*., ¶¶17-18, 21. When Shaw arrived at her house, he was arrested. *Id*., ¶¶24-27. The reasons given for the arrest included "you have tickets;" "this is a traffic stop;" "you have outstanding arrest warrants;" and "that's what you get for filing complaints against Milwaukee Police Department officers." *Id*., ¶28. Shaw was taken to the police station for questioning then taken to the Milwaukee County Jail. *Id*., ¶¶29-38.

The following day, on February 14, 2017, Shipman "falsified" a probable cause statement regarding the prior day's arrest. *Id*., ¶39. The statement said that Florez requested heroin from Shaw in exchange for money. *Id*. The statement purported that the audio-recording from February 13, 2017, captured a conversion in which Florez told Shaw to "come through with heroin" and Shaw "agreed to deliver said heroin." *Id*., ¶¶21, 39. Shaw states that this conversation never happened; that Florez provided false information to the police because she had been arrested for "first degree homicide by overdose" and wanted to make a good deal with the police. *Id*., ¶¶19, 39. Shaw states that, "approximately 48-72 hours after [he] was arrested and taken into custody," a judge found probable cause for the arrest based on the "falsified" probable cause statement. *Id*., ¶¶40-43.

---

[1] *See* CCAP, https://wcca.wicourts.gov/caseDetail.html?caseNo=2017CF000769&countyNo=40&mode=details and https://wcca.wicourts.gov/caseDetail.html?caseNo=2017CF003355&countyNo=40&index=0&mode=details.

On February 18, 2017, Daugherty filed the audio-recording in Milwaukee County criminal case 17CF769 (possession of heroin, cocaine, and firearms). *Id*., ¶46. Shaw states that this was a "prohibited public disclosure" that violated his privacy rights. *Id*., ¶47. Daugherty did the same thing again on July 22, 2017, in Shaw's other case, Milwaukee County criminal case 17CF3355 (reckless homicide/deliver drugs). *Id*., ¶49. Chisolm knew this had happened. *Id*., ¶¶50-51. Between March 2017 and August 2017, Daugherty "perpetuat[ed] fraud" by introducing as evidence false police reports, evidence, and affidavits in his two pending criminal cases. *Id*., ¶¶53-57.

On February 21, 2020, Judge Wall held an evidentiary hearing in one of Shaw's criminal cases. *Id*., ¶58. Shipman admitted at the hearing that the audio-recording did not capture Shaw saying that he could "come through with heroin." *Id*., ¶59. Judge Wall allegedly said, " it doesn't matter if the CR-214 document contains falsified information because Assistant District Attorney Patricia Irene Daugherty just used that document to get you into court;" "I told you before it doesn't matter if the CR-215 document is falsified anymore, we're past that and now it's a jury trial issue;" and "you don't talk when I'm talking do you understand me . . . ." *Id*., ¶61. Judge Wall ended the hearing after 20 minutes "because he had other things to do." *Id*., ¶60. Shaw states that Judge Wall "tampered with the court record" and is "endorsing the manufacturing of evidence." *Id*., ¶¶62-64.

Since February 2017, Shaw has had seven different attorneys, all of whom are white males. *Id*., ¶¶65-66. They all refused to "adequately" represent him. *Id*., ¶66. Shaw is now *pro se* in his criminal cases, with Attorney Hart acting as "standby counsel." *Id*., ¶67. In this capacity, Hart has interfered in his criminal defense by telling his private investigator (Jason Barber) not to subpoena Delacruz. *Id*. Hart also "attempted to conceal" a fabricated witness statement by a

4

different private investigator (Sara Decorah). *Id.*, ¶68. Shaw states that it is "common knowledge" that the public defender's office will not adequately represent their clients. *Id.*, ¶69. For relief, Shaw seeks monetary damages and injunctions. Dkt. No. 15 at 39-40.

THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Shaw asks to proceed with the following claims: (1) a Fourth/Fourteenth Amendment claim against Shipman, Stachula, and Delacruz regarding the February 13, 2017 arrest and "fabricated" probable cause statement; (2) a Fourth Amendment "privacy rights" claim against Daugherty regarding the audio-recording; (3) a Fourteenth Amendment "equal rights" claim against Daugherty, Hart, and Wall regarding discrimination in Wisconsin's criminal justice system; (4) a "supervisory liability" claim against Chisolm regarding Daugherty's decision to file the audio-recording in a state court proceeding; (5) a "municipal liability" claim against Milwaukee County/Chisolm regarding the "wide-spread practice" of filing audio-recordings in a state court proceeding and falsifying probable cause statements; and (6) a state law "tort claim" regarding the audio-recording. Dkt. No. 15, ¶¶74-108.

1. **Shaw's Claims Regarding the February 13, 2017 Audio-Recording**

Shaw claims that it was unconstitutional for the defendants to audio-record his February 13, 2017 conversation with Florez and use it in a state court proceeding. But the Supreme Court has long held otherwise. *United States v. White*, 401 U.S. 745, 750 (1971); *United States v.*

5

*Eschweiler*, 745 F.2d 435, 437 (7th Cir. 1984); *see, e.g.*, *United States v. Scott*, No. 1:09-CR-98-TLS, 2011 WL 2413821, at *6 (N.D. Ind. June 10, 2011) ("Where one of the parties to the communication consents to have the communication electronically monitored—with or without the defendant's knowledge—[] the Fourth Amendment [is not] offended."); *United States v. Thompson*, 811 F.3d 944, 949 (7th Cir. 2016) ("[I]t is well established that . . . an audio recording taken by an informant would not transform his actions into a search;"); *United States v. Nash*, No. 4:13-CR-0022-TWP-MGN, 2013 WL 5503796, at *2 (S.D. Ind. Oct. 2, 2013) ("The Supreme Court has clearly established that the use of a confidential informant and audio recordings made by such an informant is not an unconstitutional search within the meaning of the Fourth Amendment."). Indeed, there is a "substantial distinction" between "revelation[s] to the Government by a party to conversations with the defendant" and "eavesdropping on conversations without the knowledge or consent of either party to it." *United States v. Karo,* 468 U.S. 705, 716 n.4 (1984). An individual "takes the risk" that his guest will cooperate with the Government but not the risk that a trustworthy friend "has been bugged by the Government without his knowledge or consent." *Id*.

Here, Shaw alleges that Florez cooperated with the police and willingly audio-recorded their February 13, 2017 conversation using a devise plugged into her cell phone. Shaw says that Florez did this because she had criminal charges pending against her and likely wanted to make a good deal with the police. The Court will therefore dismiss all claims that relate to the February 13, 2017 audio-recording made with Florez's consent, including the "supervisory liability" claim against Chisolm and municipal liability claim against Milwaukee County.

6

Case 1:20-cv-01533-WCG    Filed 02/23/21    Page 6 of 11    Document 29

### 2. Shaw's Claims Regarding the "Fabricated" Probable Cause Statement to Support his Arrest

Shaw states that Shipman, Stachula, Delacruz, Daugherty, Hart, and Wall were all involved in fabricating the probable cause statement used to support his arrest. To state a claim under the Fourth Amendment, Shaw must allege that he was arrested without probable cause. *Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 917 (2017). To state a claim under the Fourteenth Amendment, Shaw must allege that: (1) a police officer or a prosecutor (acting as an investigator) manufactures evidence that he knows to be false, and (2) he was deprived of liberty as a result. *Petty v. City of Chi.*, 754 F.3d 416, 422 (7th Cir. 2014).

Shaw states that Shipman, Stachula, and Delacruz arrested him without probable cause because the probable cause statement was fabricated. He states that these individuals were listening in to the conversation and knew that he didn't state that he would be "coming though with heroin" yet they filed a probable cause statement which purported that he did. The probable cause statement was used to arrest him. Thus, Shaw alleges, these defendants violated his rights under the Fourth and Fourteenth Amendments.

It is unclear from his complaint what Shaw actually said to Florez during the recorded telephone call. He denies that he said he was "coming through with heroin" but does not state what words he used. Obviously, if the officers simply paraphrased what Shaw said, no violation would be shown. It is also noteworthy that while Shaw accuses the police of fabricating what he said to Florez over the phone, he does not address the other evidence described in the probable cause affidavit, including the fact that when he was taken into custody on the way to his meeting with Florez he had in his possession powder cocaine, cocaine base, and heroin. A loaded firearm was also found next to him in the car. Am. Compl., Ex. 1, Dkt. No. 15-1. Based on this evidence, which is not alleged to have been fabricated, probable cause existed for Shaw's arrest even if, as

7

he alleges, he only told Florez he was coming to repay a debt. His claims against Shipman, Stachula, and Delacruz for violating his Fourth and Fourteenth Amendment rights by fabricating evidence will therefore be dismissed.

In any event, the Court must dismiss Daugherty and Wall from the action because they are absolutely immune from suit under §1983 for their roles in prosecuting and judging a criminal case, *i.e.*, for their conduct "intimately related to the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976); *see also Agrawal v. Pallmeyer*, 313 F. App'x 866 (7th Cir. 2009). A prosecutor has absolute immunity "even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); *see also Fields v. Wharrie*, 672 F.3d 505, 516 (7th Cir. 2012). Similarly, a judge has absolute immunity unless he acts "in the absence of all jurisdiction." *See Polzin v. Gage*, 636 F.3d 834 (7th Cir. 2011).

Shaw alleges that Daugherty filed charges against him based on false evidence and that she introduced fabricated evidence while prosecuting his criminal cases. Filing charges against a defendant and introducing evidence in a criminal case are tasks intimately related to the judicial phase of the criminal process. Shaw does not allege that Daugherty was involved in any aspect of "investigating" the charges against him. Thus, she is entitled to absolute immunity.

Shaw alleges that Judge Wall did not properly consider his assertions that the evidence presented against him at a hearing was fabricated. A judge's decision regarding admissibility of evidence during a hearing is intimately related to the judicial phase of the criminal process. Thus, Wall is also entitled to absolute immunity.

The Court will also dismiss Hart from the case because public defenders are not considered state actors under §1983. *See Polk County v. Dodson*, 454 U.S. 312, 318, 325 (1981). Shaw's

only allegation against Hart is that he convinced Shaw's private investigator (who is not a state actor) to not subpoena Delacruz and that he tried to "conceal" the statement of another private investigator. Shaw does not allege that Hart "conspired" with state actors regarding his criminal cases. *See, e.g.*, *Tower v. Glover*, 467 U.S. 914 (1984) (concluding that a public defender who conspires with state officials to deprive a plaintiff of his constitutional rights acts under of state law). Shaw fails to state a claim against Hart.

The Court further notes that even if Shaw did state a claim for a constitutional violation arising out of his arrest, the Younger Abstention Doctrine provides that federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with on-going state proceedings absent extraordinary circumstances. *See SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010). Extraordinary circumstances exist where the danger of irreparable loss is both great and immediate. *Younger v. Harris*, 401 U.S. 37, 45 (1971). Federal claims arising from illegal searches, seizures, and detentions involve constitutional issues that may be litigated during the course of the criminal case. *See Gakuba v. O'Brien*, 711 F.3d 751, 751 (7th Cir. 2013). Because such issues will be resolved in the state court proceeding, they do not constitute a loss that is irreparable and immediate. *See id*. Under such circumstances, district courts must instead stay the federal civil rights action pending litigation of the state court criminal case. *Id*. But since Shaw's complaint fails to state a claim, no stay is required.

3. **The Remainder of Shaw's Claims**

The Court will dismiss the remainder of the claims in this case. Shaw's equal protection claim regarding wide-spread discrimination in Wisconsin's criminal justice system is too vague to state a claim. Shaw's allegations that "Wisconsin is a particularly hostile location for people of African descent in general" and "Wisconsin outranks the rest of the county in its state racism index

score" do not meet the pleading standard under *Twombly*. Similarly, Shaw's allegation that Milwaukee County has a "custom or practice" of fabricating probable cause statements is conclusory in nature, and devoid of any basis in fact, so it does not state a claim. Finally, Shaw's purported state law "tort claim" regarding the audio-recording belongs in state court as there is no federal claim with respect to audio-recordings from which he can assert supplemental jurisdiction over the alleged state law violation.

## OTHER PENDING MOTIONS

Shaw filed a motion to substitute judge, dkt. no. 23, and a motion for leave to appeal without prepayment of the filing fee, dkt. no. 26. Regarding the motion to substitute judge, Shaw states that "someone and/or a group of individuals" in the Green Bay clerk's office "tampered with the U.S. Postal Mail/plaintiff's submissions/court filings" because the proposed amended complaint that he placed in the prison mailbox on January 1, 2021, did not get e-filed until January 6, 2021. Dkt. No. 23.

No one in the Green Bay clerk's office is tampering with Shaw's court filings. The clerk's office is very busy, and short delays in e-filing a document, especially around the holidays, is to be expected. Shaw also states that he is at the Milwaukee County Jail and it would be "burdensome on [him] to travel all the way to Green Bay" for a trial, but the Court need not address that issue since as it now stands, no trial is needed. The Court therefore denies Shaw's motion to substitute judge.

Shaw's motion for leave to appeal without prepayment of the filing fee relates to his notice of appeal from the Court's dismissal of the case for failing to file an amended complaint within the time allowed. The Court granted his motion for relief, however, and vacated that judgment on January 27, 2021, thereby rendering Shaw's appeal from that order moot. Dkt. No. 24. If Shaw

chooses to appeal from the judgment of dismissal the Clerk is directed to enter in this order, he should file a new notice of appeal within the time noted below. His motion for leave to appeal the previously vacated judgment is denied since it is not in good faith. 28 U.S.C. § 1915(a)(3).

## CONCLUSION

In sum, the amended complaint fails to state a claim on which relief can be granted. Shaw's motions to substitute judge and for leave to appeal the previously vacated judgment, Dkt. Nos. 23 and 26, are denied. Because Shaw has already been granted leave to amend, dismissal at this point is with prejudice as it appears that Shaw is unable to in good faith allege any facts that would state a federal claim upon which relief can be granted. The Clerk is directed to enter judgment of dismissal.

**SO ORDERED** at Green Bay, Wisconsin this __23rd__ day of February, 2021.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.