UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM ROBERT SHAW,

        Plaintiff,

        v.                              Case No. 20-C-1533

COUNTY OF MILWAUKEE,
PATRICIA IRENE DAUGHERTY,
JOHN R. SHIPMAN,
NICHOLAS STACHULA,
LT. MEDRINA DELACRUZ,
EDMUND W. FITTING, and
CITY OF MILWAUKEE,

        Defendants.

## SCREENING ORDER

Plaintiff William Robert Shaw, who is currently serving a state prison sentence at Columbia Correctional Institution and representing himself, brought an action under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court to screen Shaw's amended complaint, Dkt. No. 54.

### SCREENING OF THE AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim

under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE AMENDED COMPLAINT

According to Shaw, on February 13, 2017, he received several calls from a woman named Trina Florez, who told Shaw he could come pick up some money that she owed him. Shaw explains that unbeknownst to him the calls were being recorded by Detective John Shipman, Detective Nicholas Stachula, and Lieutenant Medrina DelaCruz. Shaw later learned that Florez had been arrested several days earlier after she provided drugs to her boyfriend, who tragically overdosed and died. According to Shaw, she became an informant, pointing to Shaw as the person from whom she had purchased the drugs. Shaw asserts that in the course of being interviewed,

2

Florez provided statements to three different officers and that the statements "were self-serving, inconsistent and false."

Based on information provided by Florez, including her identification of Shaw in a photo-array, statements that she had purchased heroin from Shaw in the past, and her knowledge of how to communicate with Shaw using two different phone numbers, one of which was known to be associated with Shaw, officers arranged a "buy-bust" where Florez called Shaw to arrange the purchase of heroin. Shaw denies that he ever sold drugs to Florez; he asserts that he only ever purchased prescription Percocet from her. He states that when Florez called him, she only invited him to meet because she had money she owed him; she did not request or mention drugs, nor did Shaw agree to deliver drugs. Nevertheless, Stachula, Shipman, and DelaCruz allegedly informed task force officers that Florez stated Shaw would "come through with heroin."

Shaw explains that, shortly after the call, he and two others arrived at Florez's home. He states that, while he waited, he and the others were "suddenly accosted by multiple law enforcement officers, at which point, they rammed the vehicle from all directions and exited their vehicles converging upon [Shaw] and the two other occupants with military style assault rifles pointing them directly at their heads without justification or cause." Shaw was found to be in possession of cocaine salt, cocaine base, and opiates, as well as a gun. Ignoring this reality, Shaw insists that he "was then arrested and detained without probable cause, justification or an arrest warrant."

Shaw was taken to the Police Administration Building, where he alleges he was interrogated by Detective Edmund Fitting, Jr., and John Shipman. Shaw states that he started to experience a panic or anxiety attack, at which time he was taken to the hospital. Shaw was then transported to the Milwaukee County Jail.

3

Case 1:20-cv-01533-WCG    Filed 05/21/25    Page 3 of 11    Document 55

According to Shaw, the next day, on February 14, 2017, Shipman falsified the probable cause statement, stating that "Florez requested heroin from [Shaw] in exchange for currency" and claiming that he had an audio recording of "Florez requesting heroin from [Shaw] in exchange for currency." *See* Dkt. Nos. 54, 54-1. Shaw asserts that about 48 to 72 hours after he was arrested, he was falsely told that probable cause had been found "to substantiate the alleged offenses." However, according to Shaw, no judge or commissioner had made a judicial determination of probable cause. Shaw explains that he did not have an initial appearance until days later, on February 18, 2017. He asserts that probable cause was not determined until March 8, 2017 during the preliminary hearing, where Shaw was bound over for trial. Shaw asserts that, "[p]ursuant to Milwaukee County's official policies and customs and usages, law enforcement officers are allotted to make Judicial Probable Cause Determinations via the CR-215 documents to unlawfully hold arrestees, who have been arrested without a warrant in custody without justification." He states that he has spoken to "over 50 plus pretrial detainees" and personally viewed the CR-215 forms and they all lacked a signature from a judge or commissioner and had only a law enforcement officer's signature. Dkt. No. 54 at 20-21.

Shaw next asserts that on February 21, 2017, Edmund Fitting, Sr., "conducted an unlawful search of [Shaw's] person, (deoxyribonucleic acid (DNA)), pursuant to a search warrant that was issued based on an affidavit" that contained misleading information and false reports "and other tainted evidence, such as, the discovered narcotics seized after the false arrest occurred on February 13, 2017." *Id.* at 25-27. Shaw also asserts that on March 10, 2017, Patricia Irene Daugherty assisted Shipman with including false information in two search warrants that were used to obtain private information from Shaw's phone, including social media and email accounts. According to Shaw, as referenced above, Shipman misled law enforcement about Florez's connection to Shaw, failed to identify Florez as a criminal informant, and falsely claimed he had evidence that never

4

existed. Shaw also asserts that "the narcotics discovered in the vehicle were inadmissible fruits of an unlawful arrest/seizure."

### THE COURT'S ANALYSIS

Shaw asserts that his Fourth Amendment rights were violated when (1) DelaCruz, Stachula, and Shipman communicated false information about Shaw to other law enforcement agents, which resulted in him being arrested and searched without probable cause; (2) Fitting "took [Shaw's] DNA, by swabbing his mouth, [on] February 21, 2017 without Plaintiff's consent, or a valid search warrant with an affidavit that contained references to evidence that never existed, fabricated police reports, and inaccurate information that was material to the determination of probable cause"; and (3) Daugherty and Shipman deliberately falsified search warrant affidavits "riddled with material misrepresentations, and omissions to ultimately mislead judges to arbitrarily issue search warrants for two of [Shaw's] cellular phones." Dkt. No. 54 at 32-38. Shaw also asserts that Milwaukee County has an official policy and custom of leading detainees to believe a judicial probable cause determination was made within 48 hours of their arrest without a warrant even though it was not.

Shaw's purported Fourth Amendment claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Under that doctrine, "when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Id.* at 487.

On February 10, 2023, following six years of protracted pretrial proceedings in the Circuit Court for Milwaukee County, during which he was represented by six different attorneys, before finally proceeding pro se, and over which seven different judges at one time or another presided, Shaw entered a no contest plea to the crime of Second Degree Reckless Homicide in connection

5

with the overdose death of a man who consumed drugs sold by Shaw to Florez, the man's girlfriend. *See* Wisconsin Circuit Court Access, *State of Wisconsin v. Shaw*, Case No. 2017CF3355, *available at* https://wcca.wicourts.gov (last visited May 21, 2025). In this, his ninth case filed in this court since 2014, Shaw seeks to pursue a claim against DelaCruz, Stachula, and Shipman based on allegations that they falsely communicated to law enforcement officers that Florez, who said she had previously purchased drugs from Shaw, had arranged another drug purchase. This arranged purchase was the buy-bust that led to Shaw's arrest. Shaw asserts that the information told to law enforcement officers was false—he says that during a phone call with Florez, Florez never requested drugs, and he never offered drugs. Indeed, Shaw asserts that he "had never provided drugs to Florez" and that it was Florez who had previously sold her prescription Percocet to Shaw. Shaw also highlights inconsistencies in Florez's statements to police, arguing that she "falsely informed" officers that Shaw was her drug dealer. Dkt. No. 54 at 8, 14, 17-18. According to Shaw, Fitting, Daugherty, and Shipman included the same false information in their affidavits in support of search warrants that they obtained after Shaw's arrest.

The Seventh Circuit has explained that "[a] plaintiff is the master of his own complaint" and when "a plaintiff's allegations *necessarily* imply the invalidity of a conviction (even one based on a guilty plea)" *Heck* bars the action. *Mordi v. Zeigler*, 870 F.3d 703, 707-08 (7th Cir. 2017). Specifically, when a plaintiff's "efforts to complain about a search [are] just a disguised way of asserting his innocence," a §1983 action is not cognizable until the conviction has been invalidated. This is because, if a jury were to believe the plaintiff's allegations, the evidentiary basis of his conviction would be wiped out. *Id.* at 708 (citing *Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003)). Here, Shaw asserts that he never sold drugs to Florez and that he was not her drug dealer—in short, he alleges that he is innocent of the crime for which he was convicted because he was not the person who supplied Florez with the drugs that killed her boyfriend. If a jury were to believe

6

Shaw's allegations, the basis of his conviction for Second Degree Reckless Homicide would be wiped out. As such, his Fourth Amendment claims about the searches, which are just a disguised way of him asserting his innocence, are barred by *Heck*.

Regardless, even if Shaw's purported Fourth Amendment claims are not *Heck*-barred, Shaw fails to state a claim upon which relief can be granted. With regard to his claim that DelaCruz, Stachula, and Shipman communicated false information to law enforcement officers prior to Shaw's arrest, Shaw highlights that Florez's statements about her prior interactions with Shaw were inconsistent and that neither she nor he ever explicitly referenced drugs or heroin on the phone call. But, at a probable cause hearing,[1] Shipman testified under oath that Florez had told him that she had purchased heroin from Shaw before and that when she called Shaw she would be arranging another purchase. She explained that when she asked Shaw "to come through," he would understand that she was asking him to provide her with heroin in exchange for money, even if, as in most drug transactions, the actual name of the drug was not explicitly stated. Dkt. No. 10 at 47:07–48:19. Florez's assertions were later corroborated when, in response to her phone call, Shaw appeared at the arranged meeting spot with cocaine salt, cocaine base, and opiates. With regard to the inconsistencies in her statements, Shipman explained that he did not view her statements as inconsistent. He testified that the variations in her statements were minor, and he explained that Florez had recently almost overdosed and had watched someone close to her die. He stated that trauma can impact a person's recollection of details. He also stated that her credibility was bolstered by the fact that she made statements against her own interests by implicating herself in the overdose death. Shipman testified that he believed her when she told him that Shaw had previously sold her heroin. *Id.* at 2-3; 11-12; Dkt. No. 54-1.

---

[1] Shaw cited and "fully incorporated by reference" the transcript of the February 21, 2020 evidentiary hearing. Dkt. No. 54 at 26.

Based on the foregoing, the Court cannot reasonably infer that DelaCruz, Stachula, and Shipman communicated "false" information to law enforcement agents prior to Shaw's arrest. Shipman believed Florez when she told him that Shaw had sold her heroin in the past, and he believed Florez when she told him that she was arranging the purchase of heroin when she called Shaw. Florez's credibility was later confirmed when, following her call to Shaw, he arrived with cocaine, opiates, and a gun. Therefore, even if *Heck* did not bar Shaw's claim, he would fail to state a Fourth Amendment claim based on allegations that DelaCruz, Stachula, and Shipman knew they were communicating false information to law enforcement agents when they informed them that Florez had telephoned Shaw to arrange the purchase of drugs. For these same reasons, Shaw also fails to state a state law false imprisonment claim.

Similarly, even if *Heck* does not apply, Shaw also fails to state claims against Fitting, Daugherty, and Shipman based on allegations that they included false and misleading information in their search warrant affidavits. Shaw's allegations with regard to these claims are vague—it is not clear what false and misleading information Shaw believes they included in their affidavits. The Court will not speculate, and Shaw's failure to include factual allegations to support his conclusory allegations is insufficient to state a claim. To the extent Shaw is referencing Florez's identification of Shaw as her drug dealer, the Court has already explained why Defendants' reliance on and communication of Florez's statements are insufficient to state a claim. In any event, the probable cause affidavits for the DNA and phone searches were made *after* Shaw's arrest. At that point, Shaw had been found in possession of cocaine, heroin, and a gun after Florez called him to arrange a meeting. Further, one of the people with Shaw at the time of his arrest stated that Shaw was his drug dealer and that he allowed Shaw to use his car in exchange for heroin. These facts, which Shaw persistently ignores, were sufficient to support a finding of probable cause for the DNA and telephone searches.

Finally, Shaw fails to state Fourth Amendment and state law false imprisonment claims based on allegations that no probable cause determination was made until five days after he was arrested without a warrant contrary to the requirements in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), which requires that police get judicial approval of a suspect's continued detention within forty-eight hours. Shaw has attached to his complaint a copy of the Probable Cause Statement and Judicial Determination form which was signed by Detective Shipman in the early morning hours of February 14, 2017, following his arrest of Shaw on February 13, 2017. Dkt. No. 54-1. The copy attached to the complaint does not include the probable cause determination of the judicial officer who was required to review the statement, but there is no reason to believe, assuming the responsible judicial officer failed to review it and sign the form, that any of the defendants was responsible for that omission. Detective Shipman's statement clearly states facts sufficient to show probable cause.

Even assuming Shaw is correct and no probable cause determination occurred until five days after his arrest, he fails to state a claim because he cannot show injury. *See Bridewell v. Eberle*, 730 F.3d 672, 676 (7th Cir. 2013); *see, e.g.*, *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (explaining that to succeed in a §1983 lawsuit, a plaintiff must not only establish a constitutional violation but also that the violation caused the plaintiff injury or damages). As Shaw concedes, on February 18, 2017, five days after he was arrested, a judge found probable cause that Shaw had committed the crimes for which he had been arrested and ordered that Shaw be held for further proceedings. *See* Wisconsin Circuit Court Access, *State of Wisconsin v. Shaw*, Case No. 2017CF0769, *available at* https://wcca.wicourts.gov (last visited May 21, 2025). Thus, even if a judicial determination had not been made previously, Shaw "would have learned these things a little sooner but would have remained in jail. This means [he] was not injured by the delay." *Bridewell*, 730 F.3d at 676-77.

Nor does Shaw state a *Monell* claim against Milwaukee County based on allegations that it condones a widespread practice of officers failing to secure judicial approval for continued detention within forty-eight hours of a warrantless arrest. Shaw appears to believe that Milwaukee County allows "law enforcement officers [] to make judicial probable cause determinations via the CR-215 documents" rather than requiring officers to obtain judicial approval for an arrestee's continued detention. Shaw asserts that he personally looked at more than fifty pretrial detainees' CR-215 forms and all of them had only the law enforcement officer's section signed and notarized; the bottom section requiring completion by the judge or court commissioner was blank. *See* Dkt. No. 54-1.

Shaw's assumption that because the bottom portion of the form is not complete, the form was never submitted to a judge or court commissioner for review is mere speculation and therefore insufficient to state a claim. As the form notes on the bottom left corner of the second page, the officer completing the form is required to distribute the original copy of the form to the court and then send copies to the sheriff, the facility, and the arrested person. This is the copy of the form that Shaw attaches to his complaint.[2] The mere fact that a detainee does not receive a second copy of the form after the judge or court commissioner makes a probable cause determination and completes the bottom portion of the form does not necessarily mean that there was no review. In short, Shaw highlighting a partially completed form is insufficient to support a reasonable inference that Milwaukee County has a widespread custom of allowing its officers to violate *Riverside*.

---

[2] Shipman completed the CR-215 probable cause statement on February 14, 2017 at 3:18 a.m., about twelve hours after Shaw was arrested without a warrant. The Court reasonably infers that, per the distribution instructions on the form, an original copy of the form was then sent to the court. Dkt. No. 54-1.

In sum, notwithstanding the 120 paragraphs comprising more than 40 pages in his Amended Complaint, Shaw has failed to allege facts upon which relief can be granted. As a result, his case will be dismissed at this stage, and the time, effort, and expense of further litigation in this matter will be avoided.

**IT IS THEREFORE ORDERED** that Shaw's Fourth Amendment claims are **DISMISSED without prejudice** because they are barred by *Heck v. Humphrey* and his remaining claims are **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this 21st day of May, 2025.

William C. Griesbach
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.